UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
PATRICK GEORGES,
        PLAINTIFF,

  - against –

THE CITY OF NEW YORK
DETECTIVE JAMES O'CONNOR,
SHIELD # "UNKNOWN",
AND AGENT ADAM BRUZZES,
SHIELD # "UNKNOWN",
NYPD CROSS-DESIGNED TO THE
JOINT FIREARMS TASK FORCE WITH
THE BUREAU OF ALCOHOL, TOBACCO
AND FIREARMS.

        DEFENDANTS.
------------------------------------------------------------X

cv 12   6430

ORIGINAL AMON, CH.J.

**COMPLAINT**

**Jury Trial Demanded**



Plaintiff, PATRICK GEORGES, is currently proceeding in *persona propia* (*pro se*) until otherwise noted, in this verified complaint alleges as follows:

**PRELIMINARY STATEMENT**

1.    This is a civil rights action in which Plaintiff PATRICK GEORGES seeks declaratory relief, compensatory and punitive damages and attorney's fees under *42 U.S.C. 1988* to redress the deprivation, under color of state law, of rights secured to him under the Fourth, Sixth and Fourteenth Amendments to the United States Constitution and *42 U.S.C. Section 1983* and under the laws of the State of New York.

2.    On August 3, 2006, Plaintiff was arrested by ATF Joint Firearms Task Force member pursuant to an arrest warrant in the Eastern District of New York, for a violation of Title

*18 U.S.C. 922(a)(1)(A).*

3. The plaintiff continued to be prosecuted on the charges although he denied transacting any firearm sales directly with the undercover agent.

4. On October 30, 2006, Detective O'Connor and Agent Burzzes contacted the Plaintiff and pre-arranged a meeting. This prearranged meeting was held, in the Borough of Brooklyn, at President Street between Utica Avenue and Rochester Avenue, in an unmarked police vehicle driven by Detective O'Connor, at approximately 7:30 p.m..

5. During the prearranged meeting Detective O'Connor and Agent Burzzes both instructed Plaintiff to contact Mr. Spence to find out whether he could supply additional firearms for sale. Detective O'Connor and Agent Bruzzes further couched Plaintiff concerning the contents of the questions he was to put forth to Mr. Spence. Plaintiff was also secretly equipped with a recording device to record the conversation that was carried out between Mr. Spence and Plaintiff.

6. Later on that same evening, Plaintiff contacted and met with Mr. Spence outside of Plaintiff's barbershop on Utica Avenue, in the Borough of Brooklyn. At the time, Plaintiff asked Mr. Spence whether he could obtain and provide additional firearms for sale? Mr. Spencer responded in the affirmative and Plaintiff further inquired as to whether he could meet and converse with the firearms' supplier. In return, Mr. Spence stated that Plaintiff could not meet or converse with the firearms' supplier. Mr. Spence went on to explain that, in order to

retrieve the firearms, he (Mr. Spence), would travel to Maryland and meet (Donald Lane), the supplier halfway.

7. Following the encounter between Mr. Spence and Plaintiff, Plaintiff returned to the prearranged location, met up with both Detective O'Connor and Agent Bruzzes and, turned over the recording device – containing the contents of the conversation had – to Detective O'Connor. Both Detective O'Connor and Agent Bruzzes listened to the contents of the conversation recorded between Mr. Spence and Plaintiff. After appearing to being satisfied with the contents of the conversation had, Detective O'Connor then down-loaded the information into another recording device, ended the meeting and left.

## JURISDICTION

8. Jurisdiction is conferred upon this court by *28 U.S.C. Section 1343(3) and (4)*, which provides for original jurisdiction in this Court of all suit brought pursuant to *42 U.S.C. Section 1983*, which provides jurisdiction over all cases pursuant to the Constitution of the United States. This Court has pendent jurisdiction over Plaintiff's state law claims.

## PARTIES AND THEIR RELATIONSHIPS

9. During all times relevant to this action, Plaintiff was and is a resident of the County of Kings, City and State of New York, residing at 358 Wortman Street, Brooklyn, New York 11207.

10. During all times relative to this action, Detective James O'Connor and Special Agent Adam Bruzzes were duly appointed as Detective and Agent of the Police Department of the City of New York, as cross-designated to the Joint Firearms Task Force with the Bureau of

Alcohol, Tobacco, and Firearms, acting under color of law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usage of the State of New York and/or the City of New York.

11. During all times relevant to this action, Defendants City of New York (hereinafter "City") is a municipal corporation incorporated pursuant to the laws of the City and State of New York and the public employer of Detective James O'Connor and Agent Bruzzes.

12. At all times relevant to this action, Defendant City operates the New York City Police Department as cross-designated to the Joint Firearms Task Force with the Bureau of Alcohol, Tobacco, and Firearms.

13. At all times relevant to this action, in February 2006, August 2006, and October 2006, defendants O'Connor and Bruzzes were assigned to work and, did in fact worked, as Detective and Special Agent for the New York City Police Department cross-designated to the Joint Firearms Task Force with the Bureau of Alcohol, Tobacco, and Firearms.

14. Defendants O'Connor and Bruzzes arrested Plaintiff on August 3, 2006, for violation of sale of firearms. Plaintiff was arrested and held in police custody due to the defendants', O'Connor's and Bruzzes's, failure, not only, to properly investigate the extent of Plaintiff's involvement, but to also ascertain whether or not Plaintiff knew that the firearms being sold were stolen, or that Plaintiff was made to believe, for the purpose of the firearms sales, that the firearms were legally obtained from a licensed dealer at a gunshot show.

### Facts Relevant to the Causes of Action

15. On or about February 9, 2006, within the Eastern District of New York, Plaintiff,

while in his barbershop on 311 Utica Avenue, in Kings County, was approached by Andrew Spence, David Jones, Elliot Rivera, and another individual unknown to Plaintiff at the time. Shortly thereafter, the unknown individual was then introduced to Plaintiff as Lionel Murato, Jr., [sic] (hereinafter referred to as "the confidential informant"). The purposes for these individuals approaching Plaintiff were to engage Plaintiff in the illegal sale and trafficking of firearms -- while making Plaintiff believe that the firearms were being legally obtained from a licensed dealer at a Gunshot Show.

16.   As a result of the lies perpetrated -- that the firearms were being obtained from a gunshot show -- Plaintiff became the target of a separate AFT investigation in New York, for firearms trafficking. The identity of the Plaintiff came to attention of the ATF because he was identified, by "the confidential informant", as a source for firearms. Keeping in mind that thorough the entire sales of the firearms, Plaintiff was unaware that the firearms were stolen. Neither did Plaintiff have any encounter whatsoever with Donald Lane -- the supplier of the firearms.

17.   The firearms were being burglarized by one Donald Lane, who was employed as an APS security guard, at the Peachtree Summit building, Alpha Protective Services, in Atlanta Georgia. Alpha Protective Services is a private firm which provides security-related services to Federal Protective Services, a subdivision of the Department of Homeland Security.

18.   Back in January of 2006, when the firearms, speed loaders and ammunition were being burglarized in Georgia, Donald Lane was the center of the investigation. Of importance, Plaintiff's identity only came to the attention of the ATF agents because he was identified as a source for firearms by "the confidential informant" also known as "Junior". Thus, as a result, a

separate AFT investigation in New York was centered around the Plaintiff for firearm trafficking. However, there is not an iota of evidence which can reflect that the Plaintiff knew, should had known that the firearms were stolen. Plaintiff never knew Donald Lane – the supplier of the firearms.

19. Based upon the trumped up and unreliable information provided by "the confidential informant" to the defendants, Plaintiff became the target of a separate investigation here in New York. Specifically, "the confidential informer", told the ATF's agents that he knew that Plaintiff sold guns. Note, other the bogus information provided to the ATF, there are no other indication, or an iota of evidence which indicated that Plaintiff sold guns.

20. Although Mr. Spence and "the confidential informant" both had probable cause to know that the firearms, speed loaders and ammunition that were being transacted were stolen, they, as per instruction of the ATF, maliciously led the Plaintiff to believe that the firearms, speed loader and ammunition were being obtained from a Gun Shot Show from a licensed gun dealer.

**FIRST CAUSE OF ACTION FOR FALSE IMPRISONMENT AND FALSE ARREST PURSUANT TO 42 U.S.C., SECTION 1983 AGAINST DEFENDANTS CITY AND DETECTIVE JAMES O'CONNOR AND AGENT ADAMS BRUZZES**

21. Plaintiff repeats, realleges and incorporates in full paragraphs the contents of Paragraphs 1 through 20.

22. Detective O'Connor and Special Agent Bruzzes had no probable cause, nor

reasonable belief that probable cause existed to arrest Plaintiff and seize Plaintiff's person.

23. Detective O'Connor and Special Agent Bruzzes intentionally fabricated governmental documents to made it look as if Plaintiff had cooperated with the government throughout the investigation of the firearms sales.

24. Detective O'Connor and Special Agent Bruzzes, abused their power and authority as employees of the New York City Police Department Cross-Designed to Joint Firearms Task Force with the Bureau of Alcohol, Tobacco and Firearms, and under the color of state and/or local law.

25. Upon information and belief, it was the deliberate choice, policy and custom of suffer all the disabling mental and emotional symptoms of such injuries, all of which may be permanent and have caused diminution in the quality of Plaintiff's life. Plaintiff detention caused him a miss a scheduled job which caused the New York Police Department to dismiss him from becoming a Police officer.

26. In addition, the acts of both Defendants were so egregious and reprehensible and were performed in a manner which so they violates law and which were so outrageous that it constitute conduct that no civilized society should be required to tolerate and, in addition to the damages inflicted to the Plaintiff and, in addition to all the measures of relief to which Plaintiff may properly be entitled herein, Defendants should also be required to pay punitive damages to punish it for its reprehensible conduct and to deter it from such conduct in the future, and as an example to others similar situated.

27.     Plaintiff, therefore, pursuant to *42 U.S.C. Section 1983*, seeks compensatory damages in this cause of action for pain and suffering for the emotional harm inflicted to him and loss of future income in the sum of Twenty Five Million ($25,000.000.00) Dollars and the additional and further sum of Twenty Five Million ($25,000.000.00) Dollars for punitive damages making a total of Five Million ($5,000.00.00) Dollars, as well as attorney's fees and all other damages available under the statute upon which this cause of action is predicated.

### SECOND CAUSE OF ACTION FOR FALSE IMPRISONMENT AND FALSE ARREST IN VIOLATION OF NEW YORK STATE LAW AND THE NEW YORK STATE CONSTITUTION AGAINST DEFENDANT CITY AND POLICE OFFICERS O'CONNOR AND SPECIAL AGENT BRUZZES.

28.     Plaintiff repeats, realleges and incorporates in full paragraphs the contents of paragraphs 1 through 20.

29.     Detective O'Connor and Special Agent Bruzzes had no probable cause, nor reasonable belief that probable cause existed, to involve and arrest Plaintiff and seize Plaintiff person.

30.     Detective O'Connor and Special Agent Bruzzes in arresting and detaining Plaintiff without probable cause, nor reasonable belief that Plaintiff was aware that the firearms being sole were all stolen, abused their powers and authority as employees of the New York City Police Department Cross-Designed to Joint Firearms Task Force with the Bureau of Alcohol, Tobacco, and Firearms, and under the color of state and/or local law in violation of the New York State Constitution. N.Y. Const. Art. 1 Section 12.

31.     The above described deliberate choice, policies and custom demonstrate a

deliberate indifference on the part of the policy makers of the Defendants City to the constitutional rights of person residing within the City of New York, and were the cause of violation of Plaintiff's rights alleged herein.

32. By reason of their acts and omissions, Defendants, acting under color of state law and within the scope of their authority, in gross and wanton disregard of Plaintiff's rights subjected Plaintiff to an unreasonable seizure in violation of Article 1, Section 12 of the New York State Constitution.

33. As a result of Defendants' conduct, Plaintiff has been adversely affected in his employment of becoming a New York City Police Officer, and in his ordinary life's pursuits.

34. As a result of Defendants' conduct, Plaintiff was deprived of his privacy and liberty, and, in addition, was emotionally traumatized and was caused, permitted and allowed to fear for his physical safety, suffer humiliation, embarrassment, anxiety and ridicule and suffer all the disabling mental and emotional symptoms of such injuries, all of which may be permanent and have caused diminution in the quality of Plaintiff's life.

35. In addition, the acts of the Defendants were so egregious and reprehensible and were performed in a manner which so they violates law and which were so outrageous that it constitutes conduct that no civilized society should be required to tolerate and, in addition to all the damages inflicted to the Plaintiff and, in addition to all of the measures of relief to which Plaintiff may properly be entitled herein, Defendants should also be required to pay punitive damages to punish it for its reprehensible conduct and to deter it from such conduct in the future, and as an example to others similarly situated.

36. Plaintiff, therefore seeks compensatory damages in this cause of action for pain

and suffering for the emotional harm inflicted to him and loss of future income in the sum of Twenty Five Million ($25,000.000.00) Dollars and the additional and further sum of Twenty Five Million ($25,000.000.00) Dollars for punitive damages making a total of Five Million ($5,000.000.00) Dollars, as well as attorney's fee and all other damages available under the statute upon which this cause of action is predicated.

**WHEREFORE,** judgment is demanded:

On Plaintiff's First Cause Of Action against Defendants O'Connor and Bruzzes, and City of New York for damages in the amount of Twenty Five Million ($25,000.000.00) Dollars and the additional and further sum of Twenty Five Million ($25,000.000.00) Dollars for punitive damages making a total of Five Million ($5,000.000.00) Dollars.

On Plaintiff's Second Cause Of Action against Defendants O'Connor and Bruzzes, and City of New York for damages in the amount of Twenty Five Million ($25,000.000.00) Dollars and the additional and further sum of Twenty Five Million ($25,000.000.00) Dollars for punitive damages making a total of Fifty Five Million ($55,000.000.00) Dollars.

Together with reasonable counsel fees, the cost and disbursements of this action and such other, further and different relief as the Court may deem just and proper.

Dated:  Brooklyn, NY
        December 10, 2012

Kings County

Dec. 13, 2012

Patrick Georges *pro se*
358 Wortman Ave.
Brooklyn, NY 11207

- 10 -

ROBERT FILIPPI
Notary Public, State of New York
No. 01FI4626060
Qualified in Queens County
Commission Expires 10/31/14

## **VERIFICATION**

State of New York  )
County of Kings   )

 I, **Patrick Georges**, being duly sworn according to the penalties of perjury deposes and says:

 That I have read the annexed Complaint and know its contents to be true to the best of my knowledge, except for those facts stated to be alleged or upon information and belief.

Dated:  Brooklyn, New York
    December 10, 2012

Kings County

SWORN TO BEFORE ME THIS 13TH

Day of December, 2012

_____
NOTARY PUBLIC

ROBERT FILIPPI
Notary Public, State of New York
No. 01FI4626060
Qualified in Queens County
Commission Expires 12/31/14

# **SWORN AFFIDAVIT**

State of New York )
County of Kings    ) s.s.:

     I, **PATRICK GEORGES**, being duly sworn in accordance with the laws, deposes and says;

     I am over the age of legal consent, a resident of the State of New York, 358 Wortman, Brooklyn 11207, New York, and make this affidavit in support of a complaint, for civil rights violation, lodged against Detective O'Connor and Agent Bruzzes.

     On August 3, 2006, I was arrested by ATF Joint Firearms Task Force members pursuant to an arrest warrant in the Eastern District of New York, for a violation of Title 18 U.S.C. 922(a)(1)(A). I was subsequently convicted, by way of plea of guilty, of illegal trafficking in firearms, and sentenced to 18 months with post release supervision.

     Subsequent to a prearranged meeting, on October 30, 2006, at approximately 7:30 p.m., I met with Detective James O'Connor (hereinafter "the Detective") and Special Agent Bruzzes (hereinafter "the Agent"), at a prearranged location – President Street between Utica Avenue and Rochester Avenue, in the borough of Brooklyn. The meeting was at the request of Detective O'Connor and Agent Bruzzes, and the same took place in an unmarked police vehicle driven by the Detective O'Connor.

     At the outset of the pre-arranged meeting, Detective O'Connor inquired whether I could provide him and Agent Bruzzes with the sale of additional firearms. At the time, I explained Detective O'Connor that, I was not the person supplying, and neither was I aware of the identity of the person supplying the firearms. In return, Detective O'Connor and Agent Bruzzes both instructed me to contact and arrange a meeting with Andrew Spence. Detective O'Connor and Agent Bruzzes both insisted that I secretly record the contents of the conversation to have between Spence and myself. They specifically instructed me to ask Spence whether he could facilitate additional firearms for sale. At that point, Detective O'Connor realized that, there were no recording device available and – in an attempt to secure / borrow one – Detective O'Connor called, or at least pretended to have called, and spoke with someone at the 77th precinct. His attempt to secure / borrow a recording device, was to no avail. I then advised the Detective that I had a recording device stored in my barbershop, and he further instructed me was to go ahead and used my recording device.

     Later on that same night, I called, arranged, and met up with Spence, inside of his vehicle, on Utica Avenue, in the Borough of Brooklyn, in front of my barbershop, and the conversation had between Spencer and myself was recorded. Per the instruction of both, Detective O'Connor and Agent Bruzzes, I asked Mr. Spence whether he could obtain and provide additional firearms for sale. His response was "yes". I further asked him, how soon he could facilitate the firearms, and whether I could speak to the individual supplying the firearms.

Page 2 of 2
Patrick Georges
Sworn Affidavit

Spence, in return, stated that I could not meet or converse with the firearms supplier. Spence when on to explain that, in order for him to retrieve the firearms, he would travel to Maryland and meet his friend halfway. That the firearms were being legally obtained from a "gun shop show". The encounter / episode between Spencer and me lasted approximately 9 minutes and some seconds.

Shortly thereafter, I returned to another prearranged location, and met-up with the Detective O'Connor and Agent Bruzzes, where they both listened to the recorded conversation had between Spence and me. After listening to the contents of the recorded conversation, Detective O'Connor and Agent Bruzzes both told me that they were going to let me go along with my like, and not arrest me, because I did not know how the firearms were being facilitated. Both law enforcement were somewhat surprised to learn that: "I had no knowledge of the identity of the firearms supplier"; "I was unaware how the firearms were being obtained and transported from Atlanta, Ga, to New York" and; "I was unaware that the firearms were stolen from Atlanta". At that point Detective O'Connor took my recording device and kept it..

Thus, as a result of the above explained, Detective O'Connor and Agent Bruzzes both, generated (untrue) reports and sworn affidavits categorizing me as an informant in a case. Put another way, as a result of these law enforcement officers' conduct, the generating of their reports contained nothing more than untrue statements, and made it look as if I was a confidential informer who had cooperated with the entire investigation, and further made it appear – from reports – that I conspired against the other individuals and contributed to their arrest.

Ever since my release from confinement, I have been receiving threats by unknown individuals, being labeled as a "rat", "snitch" and "informant". I currently live in fear for my safety. All this came about, as a result of the reports and sworn (untrue) affidavits generated by both, Detective O'Connor and Agent Bruzzes.

Dated:     December 4, 2012
           Brooklyn, NY

_____
Patrick George
358 Wortman Ave.
Brooklyn, New York 11207

Kings County

SWORN TO BEFORE ME THIS 12th

Day of December, 2012

_____
NOTARY PUBLIC

ROBERT FILIPPI
Notary Public, State of New York
No. 01FI4626060
Qualified in Queens County
Commission Expires 12/31/14

## AFFIDAVIT OF SERVICE

State of New York )
County of Kings ) s.s.:

I, Patrick Georges, being duly sworn depose and says:

I am the Plaintiff / Petitioner in the annexed caption matter, and a resident of the State of New York.

That on December ___, 2012, I served a copy of my Complaint pursuant to Title 42, Section 1983, against the City of New York, at City of New York, Law Department, at 100 Church Street, New York, New York 10007, and further filed the original with the *Pro Se* Clerk's Office, at the United States District Court, Eastern District of New York, 225 Cadman Plaza East, Brooklyn, New York 11201, by depositing the same in a rapper properly secured, and placing it into a depository box under the exclusive care and custody of the United States Postal Service.

 

                                                                                        Patrick Georges
                                                                                        358 Wortman Avenue
                                                                                        Brooklyn, New York 11207

SWORN TO BEFORE ME THIS ___

Day of _____, 2012.

_____
      NOTARY PUBLIC

Det James O'Connor
Spl. Agt. Adam Buzzess
JTTF

203 37th Street
Brooklyn, N.Y. 11232